## A. C. & SONS, INC.
*vs.*
## FIRST NATIONAL BANK & TRUST COMPANY OF NEW HAVEN

Court of Common Pleas　New Haven County　File No. 34107

MEMORANDA FILED JULY 22, 1943;
SEPTEMBER 6, 1943; AND SEPTEMBER 14, 1943.

*Nelson Harris,* of New Haven, for the Plaintiff.

*Curtiss K. Thompson* and *Albert H. Barclay,* of New Haven, for the Defendant.

FITZGERALD, J.　The decisive question in the case is

whether on Saturday morning, September 19, 1942, the plaintiff, acting by and through Peter Criscuolo, in fact deposited to its account with the defendant bank the sum of $132 in cash or the sum of $32 in cash. In the last analysis the question is one of fact. There are present, however, certain aspects that have perplexed the court. Although the sum of money involved is comparatively nominal, the court appreciates that the point in issue is of vital importance to the parties and far exceeds in degree their differences as gauged by the dollar sign. Accordingly, the court deems it advisable to prepare and file a preliminary memorandum as a preface to the judgment to be entered at a later date.

It appears that on the date in question Criscuolo was an employee of the plaintiff corporation as well as its vice-president and one of its three stockholders. It also appears that the teller at the defendant bank who handled the particular transaction was Studley G. Beach, who has been in its employ for the past 15 years.

At the trial on June 29, 1943, Criscuolo testified that his brother (a fellow employee, stockholder and officer of the plaintiff corporation) turned over to him on the morning in question for deposit at the defendant bank, the sum of $132 in cash received in the course of business; that he counted the money at the office of the plaintiff and it totalled this amount; that he then and there prepared an original (Ex. B) and a duplicate carbon (Ex. A) deposit slip on forms of the defendant which plaintiff had at this office; that he proceeded to the defendant bank and handed across the counter to the teller (Beach) the sum of $132 in cash together with the original deposit slip (Ex. B) and the pass book of the plaintiff (Ex. C); that he saw the teller count the money and make an entry in the pass book; that when he inspected the pass book after the teller had returned it to him he observed that the entry made by the teller was in the amount of "132—"; that the amount of money that he (Criscuolo) had entereed on the original deposit slip turned over to the teller was "$132.00" which corresponded to the amount of money actually turned over by him to the teller; that the duplicate carbon deposit slip also contained the designation of "$132.00."

In passing it may be noted that the deposit slips prepared by Criscuolo carry the date of September 20, 1942, rather

than the actual date of September 19, 1942. This mistake as to date is not important to the case.

It may also be noted that the original deposit slip (Ex. B) has been in the possession of the defendant bank since September 19, 1942, up until the trial; and that the duplicate carbon deposit slip (Ex. A) and the pass book (Ex. C) have been in the possesion of the plaintiff during the aforesaid period of time.

The foregoing exhibits contain the following entries in pen and ink:

Ex. A (duplicate carbon slip): "$132.00"

Ex. B (original deposit slip): "$32.00"

Ex. C (pass book): $132-"

However, it appears on the face of Ex. B (original deposit slip), immediately to the left of the number "3" forming the entry "$32-" that a pin point or point of a knife has scraped out the number "1." The scraping or eradication in itself forms a neat number "1" and is apparent to the naked eye even upon a very casual inspection of the deposit slip. So also the deletion in question seemingly follows the pattern of the number "1" appearing on the duplicate carbon deposit slip, both as to size and location.

When was this deletion made? Was it *before* or *after* the original deposit slip was handed over by Criscuolo to the defendant's teller? If deletion there has been, why wasn't an ordinary rubber eraser used? Other questions could be asked.

The defendant offered as its witness the teller Beach. Mr. Beach of course could not recall the specific transaction of September 19, 1942, and the court would hardly expect him to if he were honest. Time and thousands of other transactions have intervened. Mr. Beach did testify, however, that it is his opinion that the number "1" appearing to the left of the entry "$32—" (the latter which he admits as being in his handwriting) presently contained in the plaintiff's pass book is not in his handwriting. In short, Mr. Beach readily identifies as his writing so much of the entry in the pass book under date of September 19, 1942, reading "$32—", but not the *number* "1" therein constituting the symbols "132—."

No handwrting expert was offered as a witness by either of the parties. The defendant did offer in evidence an enlarged photograph of several entries on the last page of the plaintiff's pass book which includes the entry (such as it may have been) of September 19, 1942. So also the defendant offered in evidence the bottle of ink which it caused to be sealed after the question came up between it and the plaintiff and which it claims was the only bottle of ink used in the particular teller's cage for some weeks prior to September 19, 1942, until sealed in the following month.

It may also be noted that Mr. Beach identified the red check mark appearing on the original deposit slip as his own and which he customarily makes on deposit slips after he counts out the money delivered to him for deposit. This procedure is adopted to indicate that the money handed over for deposit equals the amount of the entry made by the depositor on the deposit slip. If the court has followed correctly Mr. Beach's testimony, *it appears that this witness did not observe the deletion of the number "1" on the deposit slip.* The court has observed previously that the deletion, as such, is visible to the naked eye and was readily apparent to the presiding judge even without the use of his reading glasses.

In an endeavor to "size up" the problem involved, the court has looked to the authorities but has derived no real assistance. *See, however, 9 C. J. S. Banks and Banking* §§ 270, 271; *7 Am. Jur. Banks* §§ 460, 461.

In the last analysis the question presented in the case at bar is eminently one of fact. Is Criscuolo telling the truth or is he a perjurer? For Criscuolo there can be no middle ground. For Beach, the defendant's teller, there could be, for it is conceivable that another employee at the bank could have made the deletion which so clearly appears on the original deposit slip, thus resulting in the plaintiff's account being credited with only a deposit of $32 instead of $132.

The court is of the opinion that in the absence of additional evidence of the defendant given by a handwriting expert or a chemist on the question of an analysis of ink in the sealed bottle, or both if possible, the issues should be resolved for the plaintiff. This is because a reading of the transcript of evidence that the court has had the stenographer prepare does not warrant the drastic conclusion that Criscuolo has

perjured himself. As noted previously, for the plaintiff to fail in its action this element must become an accepted subordinate fact in the case. A judgment against the bank, as previously noted, does not carry with it a finding that Beach, its teller, was criminal. There could be another explanation by inference previously noted.

In the event that the defendant does not offer satisfying additional evidence on or before August 10, 1943, along the lines heretofore indicated, the court will enter judgment for the plaintiff to recover of the defendant as damages the sum of $100 plus interest from September 19, 1942, until August 10, 1943, together with the costs of this action.

Final memorandum of decision.

The preliminary memorandum of the court filed on July 22, 1943, gave the defendant leave to offer additional evidence on or before August 10th. On motions of the defendant the time of final hearing was advanced to other dates during the summer and finally held on September 2nd and 3rd.

The court has now had the benefit of testimony given by Mr. Albert D. Osborn of Montclair, New Jersey, on behalf of the defendant. It appears that Mr. Osborn is a handwriting expert of considerable experience. His testimony on direct examination, cross-examination, redirect examination, etc., has been carefully analyzed by the court, as well as the enlarged photographic exhibits of various deposit entries offered in evidence by the defendant through this witness which were developed by the witness himself preliminary to and in preparation for his appearance on the witness stand. It is Mr. Osborn's opinion that the number "1" appearing to the left of the numbers "32-" on the plaintiff's pass book (Ex. C) was written in at a later time. The disputed number "1", opines Mr. Osborn, appears to him to have been made with a studied effort and not in the hasty manner that a bank teller would be expected to make a number "1" in making an entry in a depositor's pass book. Certain phases of the cross-examination of this witness, however, have made these expressions of opinion, and others, of doubtful value.

The question is whether Mr. Osborn's testimony in its entirety, together with the additional exhibits in the case, is such as to defeat the plaintiff's action. Had the court entered judgment on July 22, 1943, when it filed the preliminary memorandum, the judgment on the evidence then before it would have been in favor of the plaintiff. This would not have been because the court, consciously or unconsciously, as argued by Mr. Thompson in his summation, invoked on behalf of the plaintiff's witness, Peter Criscuolo, a presumption of innocence of wrongdoing. Rather it would have been because the court, among other things, was at a loss to understand how Mr. Beach, as a reasonably careful teller, could have failed to note the apparent "digging out" of the number "1" appearing on the face of the plaintiff's original deposit slip (Ex. B) when before him for inspection on September 19, 1942, if such had been present then as it was at a later date. Manifestly an inference could be drawn that the eradication of the all-important number "1" in the plaintiff's original deposit slip came about *after* the deposit was made and the entry noted in the pass book, and *not before*.

This specific aspect, to be sure, is not in itself determinative of the case, since Mr. Beach in an unguarded or busy moment may have failed to observe the rather obvious eradication on the original deposit slip. Be that as it may, the aspect as such remains an element in the case together with other elements, and is considered by the court in conjunction with all the elements constituting the case as a whole. On this point it is to be noted that Mr. Osborn is of the opinion that the outline of the number "1" scraped on the original deposit slip is identical with the number "1" appearing on the plaintiff's duplicate carbon deposit slip (Ex. A) as to pattern and placement in reference to the numbers "32-". See preliminary memorandum, paragraph seven thereof.

With all due respect to the testimony of Mr. Osborn, and that of Mr. Munroe who occupied the same cage with Mr. Beach on September 19, 1942, as a teller, the court concludes that the plaintiff is entitled to a judgment in its favor. In reaching this conclusion the court has re-examined the transcript of the evidence heard at the hearing on June 29, 1943, as well as pondered on the evidence offered on September 2nd and 3rd, and has carefully studied all the exhibits in the case. This task has occupied a weekend devoid of all

other pursuits. It is deemed that there is a preponderance of the evidence, perhaps slight according to a critical standard, but a preponderance nevertheless, in favor of the plaintiff. This is sufficient in a civil action.

The issues are found for the plaintiff. Accordingly, judgment will enter for the plaintiff to recover of the defendant damages in the amount of $100 with interest to date computed to be $5.73 (totalling an award of $105.73), and costs of suit.

Counsel in the case are entitled to receive, and are accorded, the praise of the court for their efforts.

---

Supplemental memorandum of decision.

In justice to Mr. Beach, the defendant's teller, a third memorandum in abbreviated form is deemed to be warranted.

The evidence in the case does not justify a finding that Mr. Beach misappropriated the sum of $100 in question, or caused to be deleted from the plaintiff's original deposit slip the all important figure "1." In point of fact the plaintiff did not make this claim at the trial, and the court expressly finds the fact to be otherwise.

In the preliminary memorandum of July 22, 1943 (third paragraph from end), the court indicated that another employee at the bank could have made the deletion in question. Rather than leave matters in an unsettled state, and with due regard to the justice of the situation, the court expressly finds:

1. The deletion of the figure "1" from the plaintiff's original deposit slip was made by an employee of the defendant other than Mr. Beach.

2. The misappropriation of the $100 in question (which should have been credited to the plaintiff's account), was made by an employee of the defendant other than Mr. Beach.

3. Mr. Beach did not participate in, and had no knowledge of, the irregularities disclosed in the immediately preceding paragraphs.

4. The guilty employee is a person (or persons), unknown

to the court, to Mr. Beach, or to the officers of the defendant banking corporation.

This memorandum is filed as a result of a conference of Attorney Morris Tyler with the presiding judge. Although Mr. Tyler is not an attorney of record in the case he attended the hearings on September 2nd and 3rd in the interest of the defendant. This memorandum is filed out of courtesy deemed to be due Mr. Beach. The suggestion of Mr. Tyler was most appropriate and one which the court is pleased to act upon.